## THE PAN TWO.
## WILLIS v. PAN AMERICAN REFINING CORPORATION et al.

District Court, D. Maryland.
March 28, 1939.

Stewart M. Yeatman, of Baltimore, Md., for plaintiff.

George Forbes and Henry L. Wortche, both of Baltimore, Md., for defendants.

CHESNUT, District Judge.

The exceptions to the libel in this case in admiralty present several questions, the most important one of which is whether an Ohio administrator of a deceased seaman may maintain this suit in admiralty in the District Court of the United States for the District of Maryland, under the Merchant Marine Act 1920 (Jones Act) for the alleged negligently caused death of his decedent.

It is alleged in the libel that the seaman, Meredith E. Melvin, was employed as a deckhand on the tug "Pan Two" owned by the Pan American Refining Corporation, and that he was drowned on April 16, 1938 in navigable waters in the State of Louisiana when the tug sank in consequence of alleged negligent navigation whereby the tug came into collision with her tow. The seaman at the time was asleep in his quarters and special emphasis as to negligence is placed on the failure to give him proper warning.

The proceeding is a libel in personam against the Pan American Refining Corporation which has a substantial place of business in Baltimore City, and also in personam against the Pan American Petroleum & Transport Co., Inc.; but in

rem against the tug "Pan Two". The exceptions as to the Pan American Petroleum & Transport Co. Inc., relate to the insufficiency of the libel to show any breach of duty by it toward the seaman and for that reason, which is conceded to be correct by counsel for the libellant, the exceptions as to it will be sustained. Exceptions will also be sustained to the libel in rem against the tug "Pan Two" because the suit is under the Jones Act which does not authorize a proceeding in rem. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827; The Black Gull, 2 cir. 82 F.2d 758; The Hanley, 2 cir. 29 F.2d 110. This also is conceded by the libellant. No objection is made to the venue.

The more important question in the case is whether the Ohio administrator can maintain the suit here. As to this the libel alleges that Joseph D. Willis was duly appointed administrator of the estate of the deceased seaman, Meredith E. Melvin, by the Probate Court of Lawrence County, State of Ohio, on February 18, 1939, he having shortly theretofore been appointed guardian of the surviving minor child of the seaman, Carol Jean Melvin, by the Court of Common Pleas of Lawrence County, Ohio, in which court on June 29, 1937, the seaman was divorced from his wife, Thelma Willis Melvin.

The respondent's legal objection to the maintenance of the suit by the Ohio administrator is put on the familiar principle that ordinarily an executor or administrator has no extra-territorial powes beyond the State where he is appointed, and therefore may not maintain suits in the courts of other States or of the United States outside of that jurisdiction. Johnson v. Powers, 139 U.S. 156, 11 S.Ct. 525, 35 L.Ed. 112; Wright v. Gilbert, 51 Md. 146, 152. This general principle of the common law has, I think, no proper application to the particular case because the administrator is here suing not as a common law administrator for the purpose of collecting and distributing assets of the decedent, but in the capacity of a trustee for a preferred class of relatives. So much was in effect said by the Supreme Court in Lindgren v. United States, 281 U.S. 38, 41, 50 S.Ct. 207, 209, 74 L.Ed. 686, affirming the decision of the 4 Cir., 28 F.2d 725:

"By this section if the injury to the employee results in death his personal representative—while not given any right of action in behalf of the estate—is invested, solely as trustee for the designated survivors, with the right to recover for their benefit such damages as will compensate them for any pecuniary loss which they sustained by the death".

The Merchant Marine Act 1920, § 33, 46 U.S.C.A. § 688, provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating right of action for death in the case of railway employees shall be applicable. * * * *"

Prior to this Act there was no right of action against the ship or shipowner for the negligently caused death of a seaman. The new right of action in such a case given by the statute according to its literal wording was "an action for damages at law" with the right of trial by jury; but in Panama R. Co. v. Johnson, 264 U.S. 375, 391, 44 S.Ct. 391, 395, 68 L.Ed. 748, the Supreme Court held that by necessary implication from the nature of the subject matter and the history of admiralty jurisdiction the new right could be exercised by a suit in admiralty in personam as well as on the law side of the court, it being said:

"The words 'in such action' in the succeeding clause are all that are troublesome. But we do not regard them as meaning that the seaman may have the benefit of the new rules if he sues on the law side of the court, but not if he sues on the admiralty side. Such a distinction would be so unreasonable that we are unwilling to attribute to Congress a purpose to make it. A more reasonable view, consistent with the spirit and purpose of the statute as a whole, is that the words are used in the sense of 'an action to recover damages for such injuries,' the emphasis being on the object of the suit rather than the jurisdiction in which it is brought. So we think the reference is to all actions brought to recover compensatory damages

under the new rules as distinguished from the allowances covered by the old rules, usually consisting of wages and the expense of maintenance and cure. See The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L. Ed. 760; The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S. Ct. 501, 62 L.Ed. 1171. In this view the statute leaves the injured seaman free under the general law—sections 24 (par. 3) and 256 (par. 3) of the Judicial Code [28 U.S.C.A. §§ 41(3), 371(3)]—to assert his right of action under the new rules on the admiralty side of the court. On that side the issues will be tried by the court, but if he sues on the common-law side there will be a right of trial by jury. So construed, the statute does not encroach on the admiralty jurisdiction intended by the Constitution, but permits that jurisdiction to be invoked and exercised as it has been from the beginning."

It will be noted that the Merchant Marine Act above quoted gives the right of action to "the personal representative of such seaman" without other description; and makes applicable to the action the provisions of law contained in the federal statutes relating to actions for death in the case of railway employees, known as the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. Section 51 also gives the right of action in case of death of the employee to the "personal representative" without further description, but "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death," etc.

It is clear that the beneficiaries of the action are not the estate of the decedent but only the classes of dependents who are named in the statute. In this respect the law is of a kindred nature to actions for negligently caused death under state statutes frequently referred to as Lord Campbell's Act, which involve somewhat different procedural provisions in different States, but generally have the feature in common that the recovery is for the benefit of a prescribed class rather than for the benefit of the decedent's estate. In accordance therewith this court permitted a Virginia administrator to sue at law in this court under the Virginia statute embodying Lord Campbell's Act.

Rose v. Phillips Packing Co., Inc., D.C., 21 F.Supp. 485, 488, on the authority of prior federal decisions to that effect. See Stewart v. Baltimore & O. R. Co., 168 U.S. 445, 18 S.Ct. 105, 42 L.Ed. 537; Weissengoff v. Davis, 4 Cir., 260 F. 16; Lauria v. E. I. DuPont De Nemours & Co., D.C., 241 F. 687; 2 Md.Law Review, 168, 170. The Maryland State cases had previously been to the contrary. Ash v. Baltimore & O. R. Co., 72 Md. 144, 19 A. 643, 20 Am.St. Rep. 461; London Guarantee & Acc. Co. v. Balgowan S. S. Co. Ltd., 161 Md. 145, 155 A. 334, 77 A.L.R. 1302; Davis v. Ruzicka, 170 Md. 112, 183 A. 569. See also Maryland Annotation of Conflict of Laws, §§ 391–397. But later a Maryland statute changed the rule. Acts 1937, Ch. 495, p. 1037. These Maryland decisions had been put largely on the ground of the differences in the provisions of Lord Campbell's Act in the other States there involved as compared with the Maryland statute on the subject.

The failure to distinguish between the special character of the personal representative as a trustee in these classes of cases and the ordinary common-law functions of an executor or administrator, has caused diversity of judicial opinion with respect to the right of a foreign administrator to maintain the suit. See 2 Md.Law Review, 168. With respect to cases arising under the Federal Employers' Liability Act, especially as the statute gives the right of action to the personal representative without further description, there has been uncertainty as to who is the personal representative authorized to sue. In Brown v. Boston & Maine R. R., 283 Mass. 192, 186 N.E. 59, the right of a foreign executor or administrator was rather flatly denied; but in Gulf, etc. R. Co. v. Wood, 164 Miss. 765, 146 So. 298, it was permitted on the authority of what the Supreme Court had said in the Lindgren case. In McCarron, Adm'r v. New York Central R. Co., 239 Mass. 64, 131 N.E. 478, it was held that a release given by an administrator appointed in New York was a good defense to a subsequent suit in Massachusetts by an administrator appointed there; while in Baltimore & O. R. Co. v. Evans, 188 F. 6, the Circuit Court of Appeals for the Third Circuit held that a release given by a West Virginia administrator was not a defense to a suit in the federal court of Pennsylvania by an administratrix appointed in that State. In Southern R. Co. v. Moore, 158 S.C. 446, 155 S.E. 740, 73 A.

L.R. 582, a South Carolina administrator was permitted to maintain the suit where the wrongful death occurred in that State, although the decedent was a resident of Georgia and his executrix had qualified and was acting there. And in Anderson v. Louisville & N. R. Co., 6 Cir., 210 F. 689, where the wrongful death occurred in Tennessee, an ancillary administrator appointed there was permitted to sue in the federal court of Tennessee although the decedent's mother and beneficiary of the suit had been appointed administratrix in Kentucky, which was the domicile of the decedent.

█ █ In giving the right of action to the personal representative without further description, Congress evidently intended to confer the right upon the lawfully and properly appointed executor or administrator of the decedent, Briggs v. Walker, 171 U.S. 466, 19 S.Ct. 1, 43 L.Ed. 243; but for the purposes of the suit he must be regarded as a trustee rather than as an executor or administrator. Although the title to the recovery is vested in him, he is not the real beneficiary of the suit but in this respect merely a nominal party holding title for the benefit of the decedent's dependents as prescribed by statute. His authority to maintain the suit does not derive from laws of the State of his appointment as an executor or administrator but is a federal statutory right and power given to carry out the policy of the federal statutes. In this respect, therefore, the extent of his authority is not limited to the confines of the State where he was appointed but is co-extensive with general federal jurisdiction, subject of course to applicable Acts of Congress as to the proper venue. In suits under the Merchant Marine Act 1920, § 33, 46 U.S.C.A. § 688, the last sentence of the section provides that—"jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." As the proper venue is thus definitely limited to one, or at the most two, district courts, it is obvious that in many cases the suit could not be maintained at all over the objection of the employer if the personal representative properly appointed in another State is unable to maintain the suit. It may be suggested that that difficulty could be overcome by the appointment of an ancillary administrator in the State in which the particular district court is located; but

there is nothing in the statute to indicate a necessity for this, and also nothing in the nature of the right of action, as the general reason for the appointment of an ancillary administrator in a particular State is merely to administer assets of the decedent situated in that State. As the particular right of action is not an asset of the estate of the decedent there is no necessity for the appointment of an ancillary administrator. Pearson v. Norfolk & W. R. Co., D.C., 286 F. 429.

█ As the statute does not define who the personal representative shall be, that is whether a domiciliary or an ancillary administrator, and as the statutes of the several States vary in their requirements as to the appointment of an administrator, it is of course possible in any given case that two or more persons may assert the right to maintain separate and independent suits in different jurisdictions as "the personal representative". And it was developed at the hearing on the exceptions in this case that the respondent's objection to defending the libel here was really based on the expectation that it would also have to defend a suit in Virginia by an administratrix of the decedent appointed in that State. This possible multiplicity of suits on the same cause of action is not properly presented by the exceptions to the libel in this case, which alleges that the administrator here suing has been duly appointed by the Ohio Probate Court. Of course it is not reasonable to assume that Congress intended to give the right of action to two or more personal representatives appointed in different States. The right is given to "the personal representative" of the deceased seaman. I construe this clearly to mean the lawfully and properly appointed personal representative; and therefore if in any particular case the respondent disputes the status of the complainant libellant as the personal representative, that defense can of course be presented by proper answer in the nature of a plea in abatement.

It is conceivable that two different district courts might each determine different complainants to be the personal representative, and if the respective complainants both recover judgments against the respondent, it would be in danger of paying twice for one cause of action. This possibility was considered in the Anderson case, supra, where, in the trial court, District Judge Sanford (later Mr. Justice Sanford

of the Supreme Court) took the view that to avoid this possible multiplicity of suits the personal representative referred to in the statute should be held to mean the domiciliary representative of the decedent; but the Circuit Court of Appeals for the Sixth Circuit rejected the view and permitted the suit to be maintained by an ancillary administrator. The court met the suggestion as to the possible embarrassment of two recoveries by pointing out that, as the right of action was given for the benefit of particular dependents and not for the personal benefit of the. complainant, the court had the inherent power over its own judgment to see that the recovery was properly applied for the benefit of the true beneficiaries.

But even this does not wholly meet the anticipated embarrassment of the respondent in the particular case. It is here said that the pending suit in this court is by an Ohio administrator for the benefit of the decedent's infant daughter, while the Virginia suit will maintain the right of the decedent's mother as administratrix to recover for her benefit and for the benefit of the decedent's wife. In neither case can the complainant properly recover unless there is proof of the existence of some dependent within the classes mentioned in the statute which, in the order of priority, are (1) surviving widow or husband and child, (2) parents, and (3) if none, then next of kin. If none of these classes survive the suit must fail. Lindgren, Administrator, v. United States, 281 U.S. 38, 43, 50 S.Ct. 207, 74 L.Ed. 686. If, as a result of both suits, it is established that the recovery, if any, is for the sole benefit of the infant child, there would seem to be no ultimate difficulty as to possible double recovery. In the possible but unlikely event of the two different courts reaching different conclusions as to who are the real beneficiaries, a double payment could possibly be avoided by prompt resort to the Federal Interpleader Act as recently amended by Act January 20, 1936, ch. 13, § 1, 49 Stat. 1096, 28 U.S.C.A. § 41(26).

The above discussion as to the possibilities of future developments in one or the other of the two cases is submitted in answer to the respondent's contention that the foreign administrator may not maintain this suit. All that is now decided on this point is that the foreign administrator, alleged in the libel to have been duly appointed by the Probate Court in Ohio, has authority to maintain this suit, and the exceptions to the libel on the ground merely that he is an administrator appointed by the court of another State must be overruled.