Petition of GULF OIL CORPORATION, Owner, in a Cause of Exoneration from or Limitation of Liability, Civil and Maritime.

Petition of S.E. GRAHAM CO., as Owner, and Graham Transportation Co., Inc. as Bare-Boat Charterer of the MOTOR VESSEL S.E. GRAHAM for Exoneration from or Limitation of Liability.

Nos. 1800, 1802.

United States District Court
D. Rhode Island.
July 29, 1963.

Jacob Rassner, New York City, for claimant Marion Cevil.

Leo Glynn, Boston, Mass., Morgan Burke, New York City, for Gulf Oil Corp.

Benjamin F. Stahl, Jr., Philadelphia, Pa., for S. E. Graham Co.

DAY, District Judge.

In these proceedings, the petitioners seek exoneration from and limitation of liability for claims arising out of a collision between the S.S. Gulfoil and the M/V S.E. Graham on August 7, 1958 in Narragansett Bay, in the State of Rhode Island. As a result of said collision, one William Cevil, of New York, N. Y., a seaman employed on said S.S. Gulfoil, sustained injuries which caused his death on the same day.

Subsequently, on December 9, 1958, the claimant, Marion Cevil, in her capacity as administratrix of the estate of said William Cevil, filed identical claims in these proceedings against each of the petitioners. In these claims she seeks damages for the loss of pecuniary benefits to her as his surviving widow, damages for pain and suffering endured by him prior to this death as a result of his injuries, and for the loss of his personal effects which were aboard the S.S. Gulfoil at the time of said collision.

The petitioners have conceded liability under the Jones Act, 46 U.S.C.A. § 688, and the sole issue before me is the amount which the claimant is entitled to recover as damages on the claims asserted by her.

At the time of his death, William Cevil was sixty-two years old, his date of birth being July 13, 1896. He had been continuously employed by the Gulf Oil Corporation for approximately thirty years and was the chief steward on the S.S. Gulfoil. The collision occurred on August 7, 1958 at approximately 6:45 A.M. and decedent died at 7:30 on the same day. The causes of his death as set forth in his death certificate were: "Burns. Fire; Face, chest, arms, legs. Asphyxia."

Prior to his death decedent and his wife owned two houses which had been purchased from his earnings. These had been converted by them into apartments and they maintained their home in one of them, the others being rented.

Although decedent was away at sea most of each year, whatever time he had

ashore between trips was spent by him at their home. He was also the owner of an automobile, of which his wife had the unrestricted use. She had not been employed at any time and received her entire support from her husband.

The testimony of the claimant as to the exact amounts which she received from the decedent for her support during his lifetime was, unfortunately, general and vague as was her testimony as to their living expenses. His personal living expenses, apart from the cost of maintaining their apartment, were clearly very small, most of his time being spent at sea. While the evidence may be open to the inference that he was in the habit of buying somewhat expensive clothes, it must be remembered that decedent, in addition to his earnings, had a substantial income from rentals. From the evidence and the reasonable inferences to be drawn from it, I feel that I am warranted in finding, and I do find, that William Cevil was a frugal and industrious individual of good character and habits. I also find that he was a considerate and generous husband.

At the time of his death he had a life expectancy of 15.07 years according to the mortality tables. If he had lived, he would have become eligible for Social Security Benefits after July 13, 1961.

In 1957, the decedent's earnings were $7,272 and in 1958 up to August 7th, they amounted to $4,407. There was no evidence to indicate that his future annual earnings would have been less than those of 1957 if he had continued to live and work in the capacity in which he was employed.

While the evidence as to the extent of decedent's contributions to the support of his wife during his life time was not as precise as it might well have been, I am satisfied from the standard of living which he maintained for his wife that a fair estimate of his annual contributions to her support prior to his death was the sum of $4,000.

■■■ Under the Jones Act the measure of damages for the death of a sea-

man as the result of personal injury in the course of his employment is that provided in the Federal Employees' Liability Act, 45 U.S.C.A. § 51. Where, as here, the claim is prosecuted by the personal representative of the deceased seaman for the benefit of his surviving spouse, the amount of recovery is based upon and limited by the pecuniary loss sustained by such spouse. Chesapeake & Ohio Ry. Co. v. Kelly, 1915, 241 U.S. 485, 489, 36 S.Ct. 630, 60 L.Ed. 1117; Montellier v. United States, 1962, D.C.N.Y., 202 F.Supp. 384; aff'd 2 Cir., 1963, 315 F.2d 180; Holliday v. Pacific Atlantic S.S. Co., 1953, D.C.Del., 117 F.Supp. 729, aff'd 3 Cir., 1954, 212 F.2d 206.

Counsel for the parties differ widely in their views as to the period during which decedent's widow would have continued to enjoy the benefits received by her from the decedent if he had not been killed.

Proctors for the claimant contend that the widow would have continued to enjoy these benefits for the balance of his life expectancy. Proctors for the petitioners maintain that I should find that the decedent would have retired at age sixty-five in order to qualify for Social Security Benefits, and that any award should be based upon and limited to a period of three years after his death.

Life expectancy is not synonymous with work expectancy. It is not to be presumed that the decedent would be able or disposed to follow his usual occupation until the hour of his death even though he continued to enjoy good health and live for the maximum period accorded by said mortality table.

In support of their contention that I should base any award for the loss of pecuniary benefits to a period of three years, proctors for the petitioners make much of certain testimony elicited from the widow during a pre-trial discovery deposition. This testimony related to certain conversations between her and decedent concerning his possible retirement at age sixty-five. In my opinion, this testimony when viewed in its entirety cannot be deemed to be proof of

any fixed determination by the decedent to retire when he became sixty-five years of age.

On the contrary, having in mind the nature of the decedent's occupation and duties, his health, his habits, his consistent work record and the standard of living being enjoyed by him and his wife, I am convinced that he would have continued to work at least for some period after he became sixty-five years of age. In my opinion it can be fairly said that he had a work expectancy of five years at the time of his death. Accordingly, I find that the pecuniary loss sustained by his widow from the date of his death to July 13, 1963, when he would have ceased to work amounts to $19,750. From this amount there must be deducted the sum of $5,000 which was paid to her under a liability insurance policy (derived from the Second Seaman's War Risk Policy) taken out by the petitioner, Gulf Oil Corporation, and on which it had paid all premiums. Moore-McCormack Lines, Inc. v. Richardson, 1961, 2 Cir., 295 F.2d 583; O'Connor v. United States, 2 Cir., 1959, 269 F.2d 578; 2 Harper & James, Law of Torts § 25.22 (1956). The award for her loss of pecuniary benefits is, therefore, $14,750.

Claimant also seeks damages for the conscious pain and suffering endured by decedent prior to his death. As hereinbefore stated, decedent's death was the result of burns on his face, chest, arms and legs, and asphyxia. Said collision occurred at approximately 6:45 A.M. and decedent died from his injuries at 7:30 A.M. Although only approximately forty-five minutes elapsed between said collision and decedent's death, the nature of his injuries would indicate that he must have suffered severe and excruciating pain for some period of time before he lost consciousness and died. There is no precise measure or rule for the ascertainment of the amount of money which is appropriate as compensation for such pain and suffering. Having in mind the nature of decedent's injuries and the likelihood that under the circumstances they were accompanied by fear of impending death, I am of the opinion that an award of $1,000 for conscious pain and suffering is warranted, and so find.

Lastly, the claimant seeks damages for the loss of personal effects belonging to the decedent. The evidence as to the fair market value of these articles was in my opinion far from satisfactory. Their cost or even their value to the decedent cannot be said to be their fair market value as of August 7, 1958. In my opinion $750 would be adequate compensation for their loss. This sum must be reduced by $300, the amount which claimant admittedly received from said Second Seamen's War Risk Policy.

Proctors for the claimant will prepare and present for entry an appropriate decree in accordance with this opinion.